Laureldale Cemetery Association, Appellant, *v.* Matthews et al.

240

Argued April 10, 1946. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Jones, JJ.

*Charles A. Wolfe*, with him *Paul D. Edelman* and *Montgomery, McCracken, Walker & Rhoads*, for appellant.

*Dawson H. Muth*, with him *Body, Muth & Rhoda, Daniel G. Rothermel, Llewellyn R. Bingaman* and *Rieser & Bingaman*, for appellees.

Opinion by Mr. Justice Patterson, May 27, 1946:

Laureldale Cemetery Association appeals from an adverse decision in a proceeding instituted by a bill in equity to have its cemetery, located in Muhlenberg Township, Berks County, declared exempt from taxation in accordance with section 204 of The General County Assessment Law of May 22, 1933, P. L. 853, which provides: "The following property shall be exempt from all county,

city, borough, town, township, road, poor and school tax, to wit: . . . (b) All burial grounds and all mausoleums, vaults, crypts or structures intended to hold or contain the bodies of the dead, not used or held for private or corporate profit."

The facts are undisputed. On December 7, 1942, the appellant corporation, Laureldale Cemetery Association, was duly organized under the Nonprofit Corporation Law of 1933, P. L. 289. Its Articles of Incorporation provided as follows: "The purposes for which this corporation is formed are the acquisition, establishment and maintenance of a cemetery in the City of Reading, Pennsylvania, or its environs, the acquisition, establishment and maintenance of private mausoleums, the acquisition and sale of land or real estate and crypts in connection therewith, and the granting of the right of sepulture in connection therewith, the acquisition and sale or other disposal of patent or patent rights incidental to or related to mausoleums. The corporation does not contemplate pecuniary gain or profit, incidental or otherwise, to its members." On December 30, 1942, the Association acquired all the property and assets of Laureldale Cemetery Company, a business corporation, including a tract of real estate containing 98.82 acres and two smaller tracts not here involved. In consideration of the transfer to it by Laureldale Cemetery Company of all its assets, the Association issued bonds in the aggregate principal amount of $113,375, designated "Purchase Money First Mortgage 4% Non-Cumulative Income Bonds", secured by a mortgage of the real estate to Berks County Trust Company as trustee for the bondholders. The bonds so issued were distributed pro rata among the shareholders of Laureldale Cemetery Company and that corporation was thereupon dissolved and its stock cancelled.

On April 20, 1943 the Association applied to the county commissioners for exemption from taxation under the provisions of the Act of 1933, P. L. 853. Ex-

emption was refused by the commissioners and the Association instituted this proceeding for a decree of exemption and an injunction against the taxing authorities. Two issues were raised by the pleadings: (1) whether part of the land claimed to be exempt was not in fact taxable because it was not used for cemetery purposes, and (2) whether the issuance of "Purchase Money First Mortgage 4% Non-Cumulative Income Bonds," as above described, did not convert the Association into a "corporation for private profit." The court below has found that the unsold and unimproved portions of the cemetery are not excessively large under the circumstances and that the entire tract in question is held and used by the Association exclusively for cemetery purposes. The correctness of the court's conclusion on this point is not questioned on appeal. On the question of corporate or private profit the chancellor rightly concluded that the issuance of bonds, interest and principal to be paid out of income, secured by a purchase money mortgage did not affect the Association's right of exemption under the Act of 1933; but he held that it was not entitled to exemption because of "additional circumstances" which "injected a partial but actual element of private profit into the debt represented by the bonds." The exceptions of the Association were overruled and a final decree was entered dismissing the bill.

The Association's nonprofit status is not affected by the "additional circumstance" that its members are former officers of Laureldale Cemetery Company or the circumstance that its bondholders are the former shareholders of that company. As bondholders they have no interest in the Association except as creditors. They cannot receive any dividends or participate in any manner in the excess of receipts over expenditures. Such excess is retained by the Association to be applied exclusively to the upkeep and development of the cemetery. It may be that four percent interest on the Association's bonded indebtedness approximates the average

annual dividend paid to the shareholders of Laureldale Cemetery Company, but this is of no significance. The bondholders are entitled to a reasonable interest on the debt and it cannot be said that four percent is exorbitant, especially in view of the provision against accumulation of interest if not fully earned.[1] Nor can it be said that any element of profit is injected by the circumstance that the bonds were distributed pro rata on the basis of $125 of bonds for each $100 par value of stock in the Cemetery Company, or $113,375 of bonds for $92,000 par value of stock. At the time of the sale of its assets to the Association the Cemetery Company stock had a book value of $175 per share. At the hearing it was stipulated by counsel that the value of the property transferred was "at least $113,375, which is the amount of the mortgage bonds issued in consideration for the assets." And the chancellor found as a fact that the property so transferred was of a value of $200,000. The evidence thus clearly establishes that the assets were sold to the Association for less than they were worth, rather than at a profit. Moreover, it is profit arising out of the Association's use and operation of the property with which the statute is concerned and not with any profit which may have accrued to the grantor corporation or its shareholders. If the assets of the Cemetery Company had been transferred to the Association at an inflated valuation another question would be presented. But the evidence and admitted facts are to the contrary. Cf. *Evergreen Memorial Park Association v. Evatt*, 141 Ohio St. 1, 46 N.E. 2d 286.

The payment by the Association of salaries to its president, superintendent, and secretary afford no basis for denying exemption. The president receives, $2400, the superintendent $2600, and the secretary $1400 per

---

[1] The court below found that no interest has in fact been paid on the bonds and that no deposit has been made in the sinking fund for payment of the principal debt.

annum. In each case the salary is in the same amount paid for the same work by Laureldale Cemetery Company, a shareholder's company organized for profit, and considering the nature and extent of the Association's business they are not excessive. Like wages paid the gravediggers such outlays are chargeable as necessary expenses incident to the proper maintenance of the cemetery. Reasonable compensation for labor or services rendered is not profit. To hold otherwise would be to nullify the exemption statute.

It is evident that the chancellor regarded the Association as a mere agent or instrumentality of the dissolved Laureldale Cemetery Company created solely as a subterfuge to escape tax liability. We are not so impressed. The undisputed and admitted facts exclude the inference that the property in question is "used or held for private or corporate profit" within the meaning and intent of the statute. As to such real estate the Association has brought itself within the terms of the exemption statute and is entitled to the benefits conferred: *Wynnefield United Presbyterian Church v. City of Philadelphia*, 348 Pa. 252, 255, 35 A. 2d 276.

The Association's bill as originally filed was not limited to the 98.82 acre tract but included two smaller contiguous tracts of 15.77 and 10.3 acres; and exemption was claimed of all three tracts commencing with the taxes for 1943. The three tracts were assessed as one parcel for the year 1943, Laureldale Cemetery Company being owner at the time of assessment. For the year 1944, however, following transfer to the Association, each of the three tracts was separately assessed. At the first hearing, which did not take place until June, 1944, the Association conceded that the two small tracts were not presently required or used exclusively for cemetery purposes and admitted tax liability as to these tracts. With the consent of counsel for the taxing authorities the bill was thereupon amended, limiting the scope of the proceeding to determination of liability for taxes on

the 98.82 tract only for 1944 and subsequent years.[2] Thus amended the bill presented a proper case for relief in equity, as the majority of the court below held: *Wynnefield United Presbyterian Church v. City of Philadelphia,* supra, 253; *First Baptist Church of Pittsburgh v. Pittsburgh,* 341 Pa. 568, 574, 20 A. 2d 209; *Dougherty v. City of Philadelphia,* 112 Pa. Superior Ct. 570, 578, 172 A. 177.

The decree is reversed and the record is remanded to the court below with instructions to enter a decree in conformity with this opinion. Costs to be paid by appellees.

[2] Tax liability for the 1943 taxes assessed on the 98.82 acre tract is not open to question. The law is certain that although property becomes exempt from taxation during the taxable year, exemption does not commence until the ensuing year and taxes assessed prior thereto are neither diminished nor pro rated. *Phila. v. Penna. Co. for the Instruction of the Blind,* 214 Pa. 138, 63 A. 420; *Halkett Co. v. City of Phila.,* 115 Pa. Superior Ct. 209, 175 A. 299.