Young Men's Christian Association, Appellant,
*v.* Reading.

Argued April 26, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and EAGEN, JJ.

*Robert F. Shapiro,* Assistant City Solicitor, with him *C. Wilson Austin,* City Solicitor, for City of Reading, appellant.

*George B. Balmer,* with him *David H. Roland,* and *Snyder, Balmer & Kershner,* for appellee.

OPINION BY MR. JUSTICE COHEN, January 16, 1961:

The Young Men's Christian Association of the City of Reading, Pennsylvania, filed a complaint in equity seeking to enjoin officials of the City of Reading from collecting real estate taxes on those portions of its building used for dormitories and a coffee shop by it and for office space by other rent-paying charitable organizations. The remainder of its building is exempt from taxation and the Y.M.C.A.'s position is that it should be totally exempt. After hearing and argument,

the lower court entered an order granting the injunction and the city has appealed.

The chancellor's findings of fact and the record reveal that approximately twenty percent of the assessed value of the Y.M.C.A.'s property is assessed for tax purposes; that of a total of 119,000 square feet, 43,552 square feet comprise the dormitory area, 1160 square feet are occupied by the coffee shop and 3900 square feet are rented to other organizations; that of a total income for the fiscal year December 1, 1957, to November 30, 1958, of $184,014.16, dormitory operations provided $76,594.23, the coffee shop brought in $18,197 and the rental of office space provided $4,832; and that of total expenses for the same fiscal year of $183,994.17, building and dormitory expenses were $100,104.92 (no segregation of the amount attributable only to the dormitories were made). Expenses of maintaining the coffee shop were not given, but the testimony indicates that this enterprise generally operated close to the break-even point.

Further, room rentals run $8 to $10.75 a week for a single room (single night rate is $2.25 plus a .25 cent membership fee); the age of residents as of November 15, 1958, varied greatly, 46.6 percent being under forty years of age and 53.4 percent being over that age; most hotels charge higher rates although one charged about the same as the Y.M.C.A.; while coffee shop rates are generally competitive with nearby lunchrooms. Finally, it seems clear that the income from all of these activities is used for the Y.M.C.A.'s general charitable purposes.

On these facts the Y.M.C.A., relying upon *Young Men's Christian Association of Pittsburgh Tax Case,* 383 Pa. 176, 117 A. 2d 743 (1955), claims complete exemption from tax; while the City of Reading, relying upon *Young Men's Christian Association of Germantown v. Philadelphia,* 323 Pa. 401, 187 Atl. 204 (1936),

asserts that a proportionate part of the Y.M.C.A.'s activities are taxable.

Initially, we are confronted with the question of whether equity has jurisdiction of these proceedings, there existing a statutory appeal procedure. Act of June 23, 1931, P. L. 932, as amended, §§2517, 2518, 2521, 53 PS §§37517, 37518, 37521. The crux of this problem is stated as well as can be in *Wynnefield United Presbyterian Church v. City of Philadelphia*, 348 Pa. 252, 35 A. 2d 276 (1944) : "A distinction has been taken between the cases in which over-assessment or inadequate exemption has been alleged and the cases in which the property owner denies the power to levy any tax. In the former, it has been held that the remedy is by appeal from the assessment, as the statute provides, and not in equity; in the latter, equity affords the remedy. . . ." Application of this principle to assessment cases has led to the unusual procedure whereby the merits of the controversy are examined before jurisdiction is determined; that is, the court has first reviewed the merits to discover if the taxpayer is totally exempt or only partially so. If it decides that the latter result is proper, it then determines that equity has no jurisdiction and dismisses the complaint. A good example of this procedure is seen in *Dougherty v. Philadelphia*, 314 Pa. 298, 171 Atl. 583 (1934).

It takes little study to realize that this procedure is at odds with the general rule laid down in *Jacobs v. Fetzer*, 381 Pa. 262, 112 A. 2d 356 (1955) (a zoning case), wherein the Act of March 21, 1806, P. L. 558, §13, 46 PS §156, is cited. The efficacy of the rule that a statutory remedy must be pursued, if one exists, in preference to any other proceeding is hardly questionable; its application to a tax assessment proceeding whereby those most familiar with the intricacies of tax assessments are able to review the controversy thoroughly is unquestionable.

However, in *Jacobs v. Fetzer,* supra, the court recognized the first-stated rule by quoting from the *Dougherty* case, supra, to the effect that equity has jurisdiction where a total want of power to tax appears. Hence, it does not seem inappropriate to review the history of this dichotomy to discover if equity jurisdiction should properly attach in a case like the present one where no allegations that the statute is unconstitutional on its face or is being applied unconstitutionally are made;[1] for absent such allegations the legal problems raised by exempting a charitable enterprise from taxation seem no different if a claim of part exemption or total exemption is asserted. The only question in each situation is one of statutory interpretation and application.

We have already referred to the modern expressions of the problem in the *Wynnefield* case, supra (a 1944 decision), and the *Dougherty* case, supra (a 1934 decision). Other recent cases are *Narehood v. Pearson,* 374 Pa. 299, 96 A. 2d 895 (1953) ; *Bradford Township Taxpayers Association v. McKean County Board of Assessment and Revision of Taxes,* 370 Pa. 468, 88 A. 2d 782 (1952) ; *Commonwealth v. Dauphin County,* 354 Pa. 556, 47 A. 2d 807 (1946) ; *Laureldale Cemetery Association v. Matthews,* 354 Pa. 239, 47 A. 2d 277 (1946) ; and *Kittanning Borough v. Armstrong County,* 347 Pa. 108, 31 A. 2d 710 (1943).

If we look to the late nineteenth century, we find several cases questioning the validity of certain taxes. *Banger's Appeal,* 109 Pa. 79 (1885), involved the constitutionality of the City of Williamsport's occupation tax. In deciding that the tax did infringe the Constitution, this Court pointed out that equity would not interfere where the tax was lawfully assessed or where

---

[1] But see *Miller v. Northampton County,* 307 Pa. 550, 162 Atl. 209 (1932).

the complaints dealt with irregularities in valuation or assessment, but that relief could be obtained in equity where there existed no power to tax or where the mode of assessment infringed upon the Constitution. To much the same effect is *St. Clair School Board's Appeal,* 74 Pa. 252 (1873), where the court upheld equitable jurisdiction to pass upon a tax levied without authority of law.

*Wheeler v. Philadelphia,* 77 Pa. 338 (1875), involved a suit in equity to restrain the city from borrowing certain sums. This was a proper procedure, said the court, when validity of a statute under which a proposed assessment or expenditure is to be made is questioned. See also *Page v. Allen,* 58 Pa. 338 (1868).

Going back another generation, we find *Hospital v. Philadelphia County,* 24 Pa. 229 (1855), where the hospital, a charity, sued to recover taxes paid under protest. The court upheld this procedure, pointing out that in the statutory appeal procedure the court of common pleas was limited to affirming or reducing an assessment and could not avoid it completely, according to the statute involved. This limit on the lower court's powers on appeal under statute does not exist today, of course.

We come finally to what appear to be the source cases: *Sharpless v. Mayor of Philadelphia,* 21 Pa. 147 (1853), and *Moers v. City of Reading,* 21 Pa. 188 (1853), in both of which the court considered bills in equity attacking the constitutionality of proposed expenditures from public funds.

Little elucidation seems necessary to realize that the doctrine stemmed originally from cases in which an unconstitutional statute or action was present. Here, equity could intervene. Use of the phrase "want of power to tax," however, gradually came to be applied not only to such cases but also to cases like the present one where any want of power to tax is not a general

want and where no constitutional question is present. Considering the ample protection of the statutory procedure now afforded a taxpayer and the greater skill of local assessing officers in reviewing these matters prior to court proceedings, it seems unjustifiable to continue upholding equitable jurisdiction where a taxpayer claims its charitable status entitles it to a 100% exemption from taxation while relegating to the statutory proceeding a taxpayer one percent of whose property is admitted or found to be taxable, the other 99% percent being exempt. We conclude, therefore, that, absent a challenge to the constitutionality of a statute or of official action thereunder, equity has no jurisdiction to restrain the collection of taxes and that the present complaint should be dismissed.

Because of the parties' reliance on past practice and because of the time lapse that would impose an inequitable hardship on the litigant, we shall determine the present controversy and affirm the lower court's conclusions relative to the dormitory and coffee shop operations of the Reading Y.M.C.A. but reverse its determinations in respect to the office rent issue.

The office rental issue poses a slightly different problem for subsection (i) of §204 of The General County Assessment Law, Act of May 22, 1933, P. L. 853, 72 PS §5020-204, exempts specifically from taxation real property owned by a charity and used or occupied jointly by it and another charity as long as this real property is necessary for the occupancy and enjoyment of the charities using it. This provision is silent concerning its applicability when the non-owner charity pays rent to the owner; but, remembering that a statute exempting property from taxation must be strictly construed,[2] we are of the opinion that this subsection

[2] *McGuire v. Pittsburgh School District*, 359 Pa. 602, 60 A. 2d 44 (1948) ; *Commonwealth v. Clark*, 344 Pa. 155, 25 A. 2d 143 (1942).

was not meant to apply to cases where the owner charity realized a rental income from the leasing of the property. We are confirmed in our view by a reading of subsection (k) of section 204 wherein the legislature specified that the receipt of rentals by a public library which leases a portion of its property shall not affect its totally tax-exempt status, thus indicating that the legislature knew how to state with precision that the receipt of rentals should not affect tax exemption. This portion of the Y.M.C.A. property, therefore, was properly assessed for tax purposes.

The decree of the court below is affirmed in part and reversed in part. Record remanded for further proceeding in accordance with this opinion. Each party to bear its own costs.

Mr. Chief Justice JONES would vacate the decree and dismiss the bill for want of jurisdiction.