## West Lawn Fire Company No. 1 Appeal

*Adam B. Krafczek* and *George B. Balmer*, for appellant.

*John E. Ruth*, for appellee.

HESS, P. J., July 27, 1961.—West Lawn Fire Company No. 1, appellant, has filed an appeal from the decision of the Board of Adjustment of the County of Berks, refusing to exempt for county tax purposes the property of appellant at the corner of Woodside and Noble Streets in the Borough of West Lawn. Testimony has been taken and the questions argued before the court en banc.

Appellant is a nonprofit corporation incorporated by order of this court on December 3, 1917. The organization was formed for the purpose of ". . . supporting a fire engine and hose company; for the prevention and extinguishing of fires, and for the saving and protection of life and property from injury by fire." It maintains a building of stone construction approximately 90 feet by 170 feet in size and consisting of two floors and a basement. Among other things, the building contains in the basement, a grill room, four bowling alleys, boiler room, small meeting room, kitchen and rest rooms; on the first floor, large auditorium complete with stage, engine room for housing the fire-fighting apparatus, library room for the borough, police station and a recreation room operated by the

borough; second floor, two rooms for meetings of members, borough council chambers and a ladies' auxiliary room. Membership in the corporation is unrestricted as to sex or residence of members, and there are presently about 1,000 members who pay yearly dues of $1. About 25 members are active in the fire-fighting activities, and the remainder are largely interested in the social activities of the club.

The income of the corporation is derived mainly from dues, rentals, small grants from municipalities served by the fire-protection services of the corporation, and profits from the grill room, including in the latter category rentals for use of the auditorium for bingo and income from so-called amusement devices. The income is devoted to maintaining the building, maintaining and equipping the fire-fighting equipment and expenses of operating the corporation. The rental income includes $100 per month which the Borough of West Lawn pays for rooms it utilizes, $100 per week which is received from a bingo operator who uses the auditorium for three nights each week, and rental charges received from organizations which pay from $15 to $20 per night to use the auditorium.

For county assessment purposes, the taxable portion of the building is assessed at $11,000, and the portion exempt from taxation is assessed at $24,250. The record does not reveal what portions of the building are exempt. It is agreed that unless appellant is entitled under law to complete exemption, the present assessed valuation is fair. Appellant contends that it is entitled to a complete exemption under the provisions of the Act of May 22, 1933, P. L. 853, sec. 204(c), as amended by the Act of August 14, 1959, P. L. 707, sec. 1, 72 PS §5020-204(c). As amended in 1959, the act reads:

"The following property shall be exempt from all county, city, borough, town, township, road, poor and

school tax, to wit: . . . (c) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, *including fire and rescue stations*, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed, and maintained by public or private charity: Provided That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and buildings thereof, and for no other purpose; . . ." (Italics supplied)

The only additions by the act of 1959 were the words "including fire and rescue stations." No attempt has been made to define what is meant by the terms used, and we have grave doubt as to the constitutionality of the amendment. The amendment must relate to the subject matter preceding it and ". . . the original law and the amendment shall be read together and viewed as one law passed at one time; . . .": Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 73, 46 PS §573. The provisions must be construed strictly, in as much as they seek to exempt property from taxation: Statutory Construction Act, supra, sec. 58(5), 46 PS §558. Read with these restrictions in mind, "fire and rescue stations," in order to be exempt from local taxation, must come within "All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, . . ." If, perchance, fire fighting might be encompassed within "benevolence, or charity" we note that the amendment does not denote "fire fighting."* Further-

---

\* We take note of the fact that owners of large forest areas and certain industrial organizations maintain what are called "fire stations" or fire control centers. Conceivably, such "fire stations" might be included within the terminology of the amendment.

more, "rescue station" is just as ambiguous. It could conceivably relate to animal rescue or an organization that engages in freeing prisoners from jails or from officers of the law. According to Webster's New International Dictionary (1949), "rescue" is defined as "deliverance or aid in delivering from restraint, violence, or danger."

As the amendment is drafted, we cannot conclude that it comes within the strict limitation of the exemption provisions of article IX, sec. 1, of the Constitution of Pennsylvania, permitting the legislature to exempt from taxation ". . . institutions of purely public charity." The term "fire and rescue stations," is too vague and indefinite to permit a construction that would bring it within the classification of a "purely public charity." Furthermore, should we construe the language to mean "volunteer fire-fighting institutions or organizations," the constitutional question would continue to confront appellant. While it is undisputed that appellant renders praiseworthy service to the inhabitants of several communities without cost in making available protection against loss and destruction of property and lives by fire, such activity does not render it a "purely public charity" within the meaning of the Constitution. "A judicial desire to be liberal toward institutions which are doing praiseworthy public work has sometimes led the courts to invest the word 'charity,' as used in the above excerpt from the Constitution, with a meaning not warranted either lexicologically or by a consideration of the ideology of the constitutional provision invoked. Webster's New International Dictionary, 2d edition, defines a 'charity' (in the institutional sense) as 'an organization or institution engaged in the free assistance of the poor, incapacitated, distressed, etc.' Under this definition the characteristics of an organized charity are: First, whatever it does for others is done free of charge, or

at least so nearly free of charge as to make the charges nominal or negligible; second, that those to whom it renders help or services are those who are unable to provide themselves with what the institution provides for them, that is, they are legitimate subjects of charity. For example, if some liberally-disposed person would erect and maintain a dormitory to provide free lodging for well-to-do people, his lodging house could not properly be called a charitable institution": Young Men's Christian Association of Germantown v. Philadelphia, 323 Pa. 401, 411-12. See also Ogontz School Tax Exemption Case, 361 Pa. 284.

Within these principles in mind, we cannot find that the laudable community service which appellant admittedly provides is rendered to "legitimate subjects of charity." Fire protection services are provided to the poor and the rich alike. In essence, appellant is providing a service which is governmental in nature and in many communities is provided by the municipality in the form of a paid fire department. If nonprofit corporations are to be afforded property tax exemptions because they render a community or governmental service, such exemption cannot be allowed under existing law as we understand the constitutional limitations. The remedy is by constitutional amendment expressing the will of the people at large to grant such exemption from taxation. A parallel situation was before the citizens of Pennsylvania in 1923 when article IX, sec. 1, of the Constitution was amended to permit the General Assembly to exempt from taxation ". . . real and personal property owned, occupied, and used by any branch, post, or camp of honorably discharged soldiers, sailors, and marines."

We know of no appellate authority in Pennsylvania that is controlling in this instance. In Beedle v. Borough of Canonsburg, 84 D. & C. 181, the Common Pleas Court of Washington County in effect held that police

organizations and firemen's pension organizations do not fall within the exemptions authorized by article IX, sec. 1, of the Constitution. We are hopeful that the present case will be appealed so that there may be appellate authority upon the question confronting us. Anticipating such appeal, and in the interest of having all questions presented for review, we will consider the matter of whether, in our opinion, appellant would be entitled to an exemption from taxation if the exemption of "fire and rescue stations" be encompassed within the constitutional limitation.

In our opinion, the answer is "No." As we have previously indicated, appellant is not an institution of learning or of public charity within the limitation of the constitutional and statutory requirements necessary to entitle it to exemption from real estate taxation. The fact that appellant's purposes and activities are praiseworthy and necessary in the community is highly commendable, ". . . but this purpose does not warrant an exemption of real estate as a public charity": Hawk Mountain Sanctuary Association v. Berks County Board for the Assessment and Revision of Taxes, 188 Pa. Superior Ct. 54, 57.

Furthermore, the record clearly indicates that a considerable part of appellant's operating revenue is derived from sales of food and alcoholic beverages, rental of offices to the Borough of West Lawn, rental of the auditorium to a bingo operator, and income from so-called amusement devices. Even though appellant were a public charity devoting its income to charitable purposes, we know of no authority that would permit the portions of its building devoted to the enumerated activities to be declared tax exempt. The rental income issue is controlled by the holding of the Supreme Court in Young Men's Christian Association v. Reading, 402 Pa. 592, 598-99:

"The office rental issue poses a slightly different problem for subsection (i) of §204 of The General

County Assessment Law of 1933, P. L. 853, 72 PS §5020-204, exempts specifically from taxation real property owned by a charity and used or occupied jointly by it and another charity as long as this real property is necessary for the occupancy and enjoyment of the charities using it. This provision is silent concerning its applicability when the non-owner charity pays rent to the owner; but, remembering that a statute exempting property from taxation must be strictly construed, *we are of the opinion that this subsection was not meant to apply to cases where the owner charity realized a rental income from the leasing of the property.*" (Italics supplied)

Insofar as the area of appellant's premises devoted to the preparation, sale and consumption of food and alcoholic beverages is concerned, we are likewise of the opinion that, even though we concluded appellant is a "purely public charity," the area so utilized would be taxable. The facts would not bring appellant within the limitations of Salvation Army v. Allegheny County, 367 Pa. 373; Young Men's Christian Association of Pittsburgh Tax Case, 383 Pa. 176; and Young Men's Christian Association v. Reading, supra, in which cases the court found that service of food is primarily for the designated charitable object and not largely for commercial purposes. In the record before us, there is nothing to prevent our conclusion that the sale of food and alcoholic beverages is principally for commercial purposes and in competition with commercial establishments.

For the reasons set forth in this opinion, we conclude that (1) the amendment to the act of 1933 is unconstitutional; and (2) should the act in question be in accord with the constitutional limitation, appellant cannot meet the burden of coming within its provisions.

And now, July 27, 1961, the appeal of West Lawn Fire Company No. 1 from the decision of the board for the assessment and revision is dismissed.