617 A.2d 821

In re the Appeal of ARCHDIOCESE OF PHILADELPHIA, Blessed Virgin Mary Catholic Church and Delaware County Pro–Life Coalition.

Appeal of BOROUGH OF DARBY, Appellant.

Commonwealth Court of Pennsylvania.

Argued June 15, 1992.

Decided Nov. 17, 1992.

Peter J. Nolan, for appellant.

Eugene F. Brazil, for appellees, Archdiocese of Philadelphia and Blessed Virgin Mary Roman Catholic Church.

Joyce A. Monaco for appellees, Delaware County Pro–Life Coalition.

Before PALLADINO and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

The Borough of Darby (Darby) appeals from an order of the Court of Common Pleas of Delaware County sustaining the appeal of the Archdiocese of Philadelphia, the Blessed Virgin Mary Catholic Church and the Delaware County Pro–Life Coalition (collectively, Taxpayer) and granting Taxpayer a property tax exemption for its leased property. We reverse.

On July 1, 1988, the Archdiocese of Philadelphia and the Blessed Virgin Mary Catholic Church (together, Lessor) and the Delaware County Pro–Life Coalition (Lessee), entered into a five-year lease agreement for Lessor's land and former

convent building in Darby, Pennsylvania. Under the terms of the lease, Lessee renovated the building at its own expense to prepare for its designated use and occupancy as a shelter for pregnant women and their dependent children, eventually to include a day-care center. The rent of $12,000.00 per year was suspended during renovation, but was to be paid monthly as of the date of Lessee's first overnight occupancy, which proved to be January 17, 1991.

As of January 1, 1990, the Board of Assessment Appeals of Delaware County placed the property, formerly deemed tax exempt, on the tax rolls. Taxpayer's appeal to the Board was denied. On further appeal, the Court of Common Pleas of Delaware County reversed and granted the exemption. Darby now appeals from that order, presenting us with the issue of whether a leasehold property, owned by one charitable institution but leased to and occupied by another, is eligible for exemption from property taxation under the General County Assessment Law (Act).[1]

On appeal,[2] Darby asserts that the trial court erred by failing to consider whether the revenue-producing nature of the property and its leasehold status, which gave full possession of the property to Lessee, preclude tax exemption under subsections 204(b) and 204(c) of the Act, 72 P.S. §§ 5020–204(b) and (c).

▮▮▮▮ To qualify for tax exemption, the owner of a property for which exemption is sought must prove that the property and its use were entirely within the statutory exemption during the entire tax year in question. Taxation of property is the rule; therefore, statutory exceptions, must be strictly construed. *Board of Revision of Taxes of Philadelphia v. United Fund of Philadelphia Area,* 11 Pa.Commonwealth Ct. 201, 314 A.2d 530 (1973).

1. Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. §§ 5020–1—5020–602.

2. Our scope of review is limited to whether the trial court erred as a matter of law or abused its discretion, and whether its findings are supported by substantial evidence. *Apollo–Ridge School District v. Tax Claim Bureau of Indiana,* 141 Pa.Commonwealth Ct. 111, 595 A.2d 217 (1991).

■ Taxpayer claimed its property was tax exempt under section 204(a)(9) of the Act, which states:

(a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

. . . .

(9) All real property owned by one or more institutions of purely public charity, used and occupied partly by such owner or owners and partly by other institutions of purely public charity, and necessary for the occupancy and enjoyment of such institutions so using it;

The trial court, in sustaining Taxpayer, held that both Lessor and Lessee are "pure public charities" [sic] as "defined in" subsection 204(a)(9), without findings as to the owner's partial use and occupancy required by that subsection. Darby does not challenge the characterization of either Lessor or Lessee as purely public charities, but claims that the leasing of the entire property to Lessee precludes its exemption even under 204(a)(9), since it is not "occupied partly by owner."

The main thrust of Darby's argument, however, is the trial court's failure to address Taxpayer's inability to pass the exclusionary tests of subsections 204(b) and 204(c) of the Act. Those sections provide:

(b) Except as otherwise provided in clauses (11) and (13) [3] of this section, all property real and personal, other than that which is actually and regularly used and occupied for the purposes specified in this section, *and all such property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity, shall be subject to taxation* ... and nothing herein contained shall exempt same therefrom.

(c) Except as otherwise provided in clause (10) [4] of this section, all property, real and personal, actually and regular-

---

3. Subsections 204(a)(11) and 204(a)(13) exempt, respectively, free public libraries and "fire and rescue stations which are founded, endowed and maintained by public or private charity," from restrictions on rental revenues, providing that net receipts are dedicated to their charitable purposes.

4. Subsection 204(a)(10), pertaining to playgrounds.

ly used and occupied for the purposes specified in this section *shall be subject to taxation, unless the person or persons, associations or corporation, so using and occupying the same, shall be seized of the legal or equitable title in the realty and possessor of the personal property absolutely.* (emphasis added).

Darby contends that subsection 204(b) precludes exemption because Lessor derives income or revenue from the property in the form of rent. Additionally, Darby argues that the property is excluded from exemption because it is not owner occupied as required under 204(c). We agree.

In order to clear the financial hurdle of 204(b), Taxpayer would need to prove (1) that the premises are not the source "from which any income or revenue is derived" by the Lessor; (2) that any rent paid was merely nominal; and (3) that the Lessee was itself the recipient of the Lessor's charity. Taxpayer has failed to prove any of these requirements.

In *Young Men's Christian Association v. Reading,* 402 Pa. 592, 167 A.2d 469 (1961), our Supreme Court analyzed a fact pattern similar to the one here, although the property owner in *Reading* occupied the building and leased only a portion of it. The Court in *Reading* held that the subsection, then (i), now (a)(9), "was not meant to apply to cases where the owner charity realized a rental income from the leasing of the property." The Court then stated that the language of the subsection, then (k), now (a)(11), which granted a specific exception for lease revenues by public libraries, showed that "the legislature knew how to state with precision that the receipt of rental should not affect tax exemption." *Id.* at 599, 167 A.2d at 472. Had the legislature intended a similar exception from lease revenues for other charitable institutions, it would have said so. Having so stated, our Supreme Court upheld the taxation of those portions of the Y.M.C.A.'s premises which were rented as office space to other charities, despite the fact that they represented only a small portion of the total building or its revenues. We reaffirmed this view in *Greater Erie Economic Development Corporation Appeal,* 61 Pa.Commonwealth Ct. 144, 433 A.2d 568 (1981); citing *Reading,* we

held that the rental arrangement in *Greater Erie* also clearly made section 204(a)(9) inapplicable. Although in *Greater Erie,* we specifically determined that the lease was profitable, the language of section 204(b) clearly denies tax exemption to property which brings in any income or revenue other than from recipients of the bounty of the institution or charity.

The record here, particularly the lease itself, establishes that Lessee is not the "recipient of the bounty" of Lessor; rather, this lease was an arm's-length transaction between landlord and tenant for fair rental value. It is a three-page standard form, typically favoring the lessor, to which Lessor appended three pages of provisions detailing costs to be paid by Lessee. In addition to the rent of $12,000.00 per year, Lessee was required to pay:

(a) a $1,000,000 comprehensive liability insurance policy naming Lessor as additional insured (paragraph 30);

(b) all costs pertaining to zoning, use and occupancy permits or licenses (paragraph 31);

(c) all real estate taxes and any other taxes or assessments resulting from the leasing of the facilities (paragraph 32);

(d) all costs of remodelling and any repairs necessary to prepare the premises for occupancy and to maintain it (paragraph 33[5]);

(e) all utilities used in the premises (paragraph 37);

(f) interior and exterior regular maintenance and upkeep including, *inter alia,* cutting and trimming of lawn, trees, and plants; janitorial service and trash removal; maintenance of pavements and parking areas, including snow and ice removal (paragraph 38);

(g) indemnification and defense of Lessor from all costs and expenses, losses or liabilities arising from occurrences on or about the premises (paragraph 39).

5. Although paragraph 33(d), which required Lessee to remove all asbestos from the basement prior to occupancy, was deleted by the parties, the record shows that Lessee subsequently performed this function as well.

There were additional financial benefits to the Lessor under the terms of the Lease as well. It is undisputed that Lessee's renovation added to the value of Lessor's property; all improvements by Lessee were at its own expense and revert to Lessor on termination of the five-year Lease (paragraph 33(b)). Lessor also could exercise its right to terminate the leasehold if, at any time, the premises required a major structural repair which Lessor considered impractical to perform (paragraph 33(c)), or if Lessee's occupancy ever caused Lessor, in its sole discretion, to believe that it faced increased insurance risks (paragraph 35).

Under these lease terms, it is difficult to envision a cost to Lessor that is not either to be paid directly by Lessee or reimbursed as additional rent. Thus, it is not necessary that we consider profitability in order to classify the rental revenues as more than nominal. If, as Taxpayer argues, the annual rent of $12,000.00 is below market value, we can hardly view it as charity when considered in the total context of the terms of the lease. Most significant are the substantial investment by Lessee in improving the property for the Lessor's ultimate benefit and Lessee's assuming what appears to be the full financial burden of the property, over and above rent payment. Therefore, we hold that the rent payments and improvements are income, precluding the property's eligibility for exempt status pursuant to section 204(b) of the Act.

■ As to Darby's contention that 204(c) is not satisfied because Lessor does not occupy the property, Taxpayer counters that Lessor parks its bus in the garage on the premises and stores used furniture, intended for charitable distribution, in the building's basement. Taxpayer contends that this amounts to use and occupation of the premises adequate to permit exemption. We disagree and hold that Lessor's use and occupancy based merely on its bus being parked in the garage and its having furniture stored in the basement does not satisfy the criterion of owner occupancy under 204(c).

This holding is consistent with our prior case law. In *Greater Erie*, the owner charity held its board meetings in the building in question, considerably more of a physical "pres-

ence" than exists here; yet, a property tax exemption was denied. The meetings took place, like the storage use here, in a room that was a part of the leasehold; however, we stated, "Even assuming that this fact establishes that [owner] occasionally 'uses' the subject premises, there is no evidence that [owner] in any way 'occupies' its premises or that the property is at present 'necessary for the occupancy and enjoyment' of [the owner]," (i.e., furthering its charitable purposes). *Id.* at 149, 433 A.2d at 570.

Darby relies on *Berks County Board of Assessment and Revision of Taxes v. Berks County Conservancy*, 102 Pa.Commonwealth Ct. 64, 517 A.2d 572 (1986), *appeal denied*, 515 Pa. 610, 529 A.2d 1083 (1987) to support its argument that 204(c) absolutely precludes tax exemption for the property. In *Berks*, we held that denial of exemption was required by virtue of the lease between the parties, saying that the result was "dictated by the clear language of Section 204(c)," and:

> [s]ince, under the lease agreement, [lessee] is the corporation which uses and occupies the properties, and since [lessee] holds neither equitable nor legal title to those properties, we must conclude that its use and occupancy cannot qualify the property for tax exemption.... Although there is some record evidence of limited use of the properties by the Conservancy in maintenance matters, it is clear that [lessee] controls the property under the lease.... Since the owner-charity must both use *and* occupy the premises under Section 204(c), we do not view the Conservancy's limited use of the properties as sufficient to meet the requirements of Section 204(c).

*Id.* at 71, 517 A.2d at 575 (emphasis in original).

This case is on point, and the trial court erred in specifically holding to the contrary.

■ The cases are consistent that in order to meet the criteria of 204(a)(9) or to clear the hurdle of 204(c), the property owner must prove its continuing right of possession and control, significant occupancy and active use of the major portion of the premises for its own charitable work in order to sustain an exemption when some portion of the property in

question is rented to another charitable entity. In this case that burden is not met. Lessor, whatever its arguable square-footage of use of the premises, has no active use or occupancy by any but inanimate objects which cannot do charitable work or in themselves serve charitable purposes. The only "presence" of the Lessor charity might be, arguably, the relatively brief periods when persons might deliver or pick up used furniture for distribution elsewhere. There is no evidence in the record as to the extent of such contact, if any, with the premises.

Section 204(c) also requires that Lessor possess the personal property absolutely. This is not possible under the terms of the lease here. On the contrary, Lessee has exclusive possession of the personal property; there is no provision in the lease allowing Lessor to use or occupy any portion of the property, even that space allegedly "occupied" by Lessor. Assuming that Lessor does use the space as claimed, it does so only at the gratuitous discretion of Lessee, which has full possession, control, and occupancy of the premises with no contractual exception. Further, Lessee has the express, unrestricted right to sublet the space which comprises Lessor's claimed occupancy and use of the premises to establish a daycare center.

Taxpayer has argued that Lessee is furthering one of the "top priorities" of Lessor. We infer from this an attempt to demonstrate that Lessee shares with Lessor an identity of purpose which equates to owner occupancy; however, we find the argument unconvincing. The relationship between the lessor and lessee in *Greater Erie* was much closer than that claimed between this Lessor and its tenant. In that case, the lessee was actually the lessor's parent organization, and incorporators of lessor were also board members of lessee. Even so, we held that the two organizations were "clearly separate entities," and denied the exemption. There is no identity between the parties to this lease. They are clearly separate, so that occupancy by one cannot equate to occupancy by the other.

The exclusions of both 204(b) and 204(c) are absolute and their language is clear. In order to satisfy section 204(b), no

income or revenue can be derived from the property except for that received directly from the recipients of the property owner's charity. Under section 204(c), the property must be owner occupied, and the owner must "absolutely" possess the building(s) thereon. If property does not clear both of these exclusionary hurdles, any exemption otherwise available under section 204(a) fails. Therefore, if Taxpayer's claim for exemption fails under either 204(b) or 204(c), the trial court's findings that Lessor and Lessee are "pure public charities", qualifying them for exemption under section 204(a)(9), are irrelevant as a matter of law.[6]

The trial court, ignoring the evidence which was before it in the lease itself, held Taxpayer's property exempt simply by finding that Lessor and Lessee operate without a profit motive and failed to require that Taxpayer carry its burden in meeting all of the statutory criteria for exemption. That burden remains on the property owner, even after its charitable nature is established and never shifts to the taxing authority. Lessor here derives revenue from the property, paid in the form of rent by Lessee, which is not a beneficiary of Lessor's charity. Moreover, there has been no occupancy and use by the owner for its own charitable purposes since the signing of the lease, July 1, 1988, and the property has not been eligible for exemption at least since that date.[7]

Accordingly, we reverse the decision of the trial court.

## ORDER

AND NOW, this 17th day of November, 1992, the decision of the trial court, dated May 23, 1991, is reversed.

6. The trial court also erred when it relied on Lessor's and Lessee's tax exempt status under the Internal Revenue Code. The standards for such classification under federal tax law are distinct, and in no way controlling on Pennsylvania taxing authorities, even in matters relating to Pennsylvania income tax or sales and use taxes. *Scripture Union v. Deitch*, 109 Pa.Commonwealth Ct. 272, 531 A.2d 64 (1987). In the case of a property tax statute, it is totally irrelevant.

7. Although the record is unclear on the subject of how long the property continued in its tax exempt status while no longer being used by the owners for charitable purposes prior to the date of the lease, the question is before us only for the tax years of 1990 onward.