**BOROUGH OF HOMESTEAD,**
Appellant,

v.

**ST. MARY MAGDALEN CHURCH, The Diocese of Pittsburgh and Board of Property Assessment and Review.**

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 2002.
Decided May 21, 2002.

Bernard M. Schneider, Pittsburgh, for appellant.

Christopher G. Ponticello, Pittsburgh, for appellees, St. Mary Magdalene Church and The Diocese of Pittsburgh.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

The Borough of Homestead (Borough) appeals from the order of the Court of Common Pleas of Allegheny County (trial court) that found certain real property owned by St. Mary Magdalen Church and the Diocese of Pittsburgh (collectively Diocese) exempt from taxation under Section 204 of The General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. § 5020–204. We affirm.

The property is located in the Borough and, prior to 1987, had been a high school operated by the Diocese. Following the closure of a local steel mill which caused

the loss of approximately 12,000 to 15,000 jobs, enrollment at the high school dropped, and the Diocese closed the school. It converted the school into an office building known as the Bishop Boyle Center in which it operated a job center to assist displaced workers. The job center occupies 5% of the Center's space. The remaining space is available to for-profit[1] and non-profit entities[2] (Licensees) whose missions involve helping the unemployed and generating new businesses for the local economy. Licensees' occupancy of the Bishop Boyle Center is governed by license agreements that are reviewed yearly by the Diocese. Under the terms of the agreements, the Licensees pay fees for occupancy. The Diocese provides janitorial services, snow removal, maintenance of common areas, as well as the interior and exterior of the premises, and it pays all utilities. The for-profit entities occupy 16% of the Center's space and the non-profit entities occupy 79% of the Center's space. The Diocese also allows various local groups and governmental units, including the Borough Council and zoning board, to use space in the Bishop Boyle Center at no cost.

As early as 1995, the Borough sought to collect from the Diocese real property taxes on the Bishop Boyle Center. Sometime prior to March 1999, the Board of Property Assessment and Review determined that the property remained exempt from taxation. The Borough appealed.

 Following a bench trial, the trial court sustained the tax exemption. It concluded that the Licensees pay fees below market value when the costs of the services provided by the Diocese are considered. Although some Licensees made improvements at their own expense, such as new carpeting, electrical wiring and converting a storage area into drafting room, these improvements are mainly cosmetic and insubstantial. Also, the trial court found that, since its inception in 1987, the Bishop Boyle Center never generated a profit; rather, the Bishop Boyle Center operated under an $800,000 deficit in the 1990s, and the Diocese subsidizes its operation. The trial court further found that the for-profit entities operate in conformity with the mission of the Bishop Boyle Center in that they use the space to facilitate recruitment efforts and to provide jobs in the local community. Timely appeal was taken by the Borough.[3]

## I.

The Borough contends that under the analyses set forth in *Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306 (1985), commonly referred to as

---

1. The for-profits included companies such as Giant Eagle, McDonald's and Lowes, who used space to interview prospective employees for their operations in a new residential and commercial development in the Borough.

2. The non-profits included: Mon Valley Supports Coordination Program, a program that provides support services to individuals with disabilities; Just Harvest, an arm of the Pittsburgh Food Bank; the Mon Valley Unemployed Committee, a welfare reform advocacy group; CATY Services, a government funded program for people with addictions; and Turtle Creek MH/MR office.

3. This Court's scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law or whether its decision is supported by substantial evidence. *Wilson Area School Dist. v. Easton Hospital*, 708 A.2d 835 (Pa.Cmwlth.1998), *affirmed*, 561 Pa. 1, 747 A.2d 877 (2000). The trial court is the finder of fact and resolves all matters of credibility and evidentiary weight. Its findings are binding on this Court if supported by substantial evidence. *St. Margaret Seneca Place v. Bd. of Property Assessment, Appeals and Review*, 536 Pa. 478, 640 A.2d 380 (1994).

the HUP test, the trial court erred in concluding that the Diocese met its evidentiary burden. In particular, the Borough contests the trial court's finding that the Licensees made nominal payments. It argues that payments are close to the going commercial rental rate and that the Bishop Boyle Center received approximately $1,178,983 in steadily rising gross income, thereby evidencing a private profit motive.

■ Under Art. VIII, § 2(a)(v) of the Pennsylvania Constitution, the General Assembly is empowered to confer tax-exempt status to institutions of purely public charity. In *Hospital Utilization Project,* our Supreme Court found that an entity qualifies as a purely public charity if it:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

It is the burden of the party claiming exemption from taxation who must demonstrate that it meets these criteria. *Wilson Area School Dist. v. Easton Hospital,* 561 Pa. 1, 747 A.2d 877 (2000).

■ We agree with the trial court that the Bishop Boyle Center is an institution of purely public charity. The *Restatement (Second) of Trusts,* § 368 provides us guidance in determining what purposes are charitable under the first prong of the HUP test. The Restatement identifies charitable purposes as including the relief of poverty, the promotion of health, governmental and municipal purposes and other purposes the accomplishment of which is beneficial to the community.

The programs offered directly by the Diocese and through its Licensees benefit the community by providing employment services to thousands of unemployed and underemployed workers in the Mon Valley following the close of the local steel mill. The programs also provide support services to those with mental and physical disabilities and addictions, and provide access to food and other social services programs to members of the community. Even the services the Diocese provides through the for-profit Licensees benefit the entire community. It offers space to those bringing employment opportunities to the area to interview prospective employees from the pool of the locally unemployed.

There is no fixed standard to determine what purposes are of social interest to the community; the interests of the community vary with time and place. *Restatement (Second) of Trusts,* § 368, Comment b. The activities at the Bishop Boyle Center serve a socially important need in this economically depressed area, benefit a substantial and indefinite class of persons and relieve the government of some of its burden in providing the services. We agree with the trial court that the Bishop Boyle Center satisfies the first four prongs of the HUP test.

As to the fifth prong of the HUP test, the Borough contends that because the Bishop Boyle Center generated gross revenue from Licensees, the Diocese did not operate entirely free from private profit motive. Recently addressing this issue, the Supreme Court in *Wilson Area School Dist.* reminded us that the appropriate inquiry is whether the surplus revenue is being utilized in furtherance of the entity's charitable purpose. Further, as the Supreme Court held in *St. Margaret Seneca Place v. Bd. of Property Assessment, Appeals and Review,* 536 Pa. 478, 640 A.2d

380 (1994), surplus revenue is not synonymous with a private profit motive, especially where the surplus revenue is utilized to cover operating expenses and increase efficiency, facilities, grounds and buildings. Moreover, surplus revenue would not affect the eleemosynary motive of the institution, especially when any surplus would have been offset by the entity's substantial indebtedness. *Id.*

Here, the trial court found that the space is provided at below the going market rate, and that the Diocese operates the Bishop Boyle Center at a substantial loss. Any revenue generated by the license payments is returned to the operation and maintenance of the Bishop Boyle Center. The trial court noted that this testimony was uncontradicted. Not only the parties, but we, too, are bound by those findings. *St. Margaret Seneca Place.* We agree with the trial court's conclusion that the Diocese operated the Bishop Boyle Center free of private profit motive. In summary, there is substantial evidence to support the trial court's finding that the Bishop Boyle Center is an institution of purely public charity.

## II.

■ The Borough also contends that Section 204(b) of the Law relating to rental income precludes tax exemption. Citing the *Appeal of the Archdiocese of Philadelphia,* 151 Pa.Cmwlth. 480, 617 A.2d 821 (1992), the Borough argues that Section 204(b) prevents exemption unless the taxpayer can prove: (1) that the premises are not the source from which any income or revenue is derived; (2) that any rent paid is merely nominal; and (3) that the tenant was itself the recipient of the owner's charity. *See id.* at 823. The Borough contends that the premises were the source of income or revenue, that more than nominal rent was paid and that Licensees were not

themselves the recipients of the Diocese's charity.

Section 204(b) provides:

(b) Except as otherwise provided in clauses (11) and (13) of this section, all property real or personal, other than that which is actually and regularly used and occupied for the purposes specified in this section, and all such property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity, shall be subject to taxation, except where exempted by law for State purposes, and nothing herein contained shall exempt same therefrom.

We agree with the trial court that Licensees here are the recipients of the Diocese's bounty. As a result, we agree that income or revenue generated by the Bishop Boyle Center does not preclude a continuation of the tax exemption.

In *Archdiocese of Philadelphia,* the charitable owner leased its property to another charitable organization under a lease that was "an arm's-length transaction between landlord and tenant for market value." *Id.* at 824. In addition to annual rent of $12,000, the tenant paid all utilities, maintained the interior and exterior of the property and made a "substantial investment" in improvements which reverted to the Archdiocese. We noted that "[u]nder these lease terms, it is difficult to envision a cost to Lessor that is not either to be paid directly by Lessee or reimbursed as additional rent." *Id.* at 824. Declining to examine the overall profitability of the arrangement, we held that the tenant was not the recipient of the bounty of the Archdiocese. Thus, the rental income prevented the tax exemption pursuant to Section 204(b).

In contrast, the trial court here found that Licensees are recipients of the bounty

of the Diocese. It noted that the fees charged Licensees are below market value. This determination reflects the Diocese's significant responsibilities to the Licensees, including interior and exterior maintenance and payment of all utilities. Also, the trial court found that improvements by Licensees are mainly cosmetic and relatively insubstantial. Importantly, the trial court found that the Diocese never derived net income or surplus revenue from the Bishop Boyle Center. Rather, the Diocese continues to subsidize the operation. These findings are supported by substantial evidence and are binding on us. *St. Margaret Seneca Place.* Moreover, these findings distinguish this case from *Archdiocese of Philadelphia.*[4]

Licensees receive the bounty of the Diocese by their subsidized use of the Bishop Boyle Center; however, they are not the ultimate target of the Diocese's charity. The intended beneficiary of the Bishop Boyle Center is the demoralized community impoverished by the loss of employment and the loss of tradition. That the Diocese uses Licensees to transform, multiply and deliver its charity to the community supports our conclusion that Licensees are necessary recipients of the Diocese's bounty. Under this arrangement, receipt of some gross revenue from Licensees does not preclude tax exemption pursuant to Section 204(b).

### III.

■ The Borough contends that two statutory requirements relating to owner occupancy preclude tax exemption. In particular, the Borough contends that Section 204(a)(9) and Section 204(c) of the Law prevent tax exemption because the Diocese does not sufficiently occupy or

possess the Bishop Boyle Center. 72 P.S. §§ 5020–204(a)(9), 204(c).

■ Once an entity seeking tax exemption is able to establish that it is a purely public charity within the meaning of Article VIII of the Pennsylvania Constitution, it must next establish that it meets the statutory requirements of Section 204 of the Law. *Wilson Area School Dist.* Taxation of property is the rule; therefore, statutory exceptions must be strictly construed. *Archdiocese of Philadelphia.* Section 204(a)(9) of the Law provides that certain property shall be exempt from taxation, specifically:

(9) All real property owned by one or more institutions of purely public charity, used and occupied partly by such owner or owners and partly by other institutions of purely public charity, and necessary for the occupancy and enjoyment of such institutions so using it.

Section 204(c) of the Law precludes tax exemption in certain situations:

(c) Except as otherwise provided in clause (10) of this section, all property, real and personal, actually and regularly used and occupied for the purposes specified in this section shall be subject to taxation, unless the person or persons, associations or corporation, so using and occupying the same, shall be seized of the legal or equitable title in the realty and possessor of the personal property absolutely.

Relying on *Archdiocese of Philadelphia,* the Borough contends that in order to meet the criteria of 204(a)(9) or to clear the hurdle of 204(c), the property owner must prove its continuing right of possession and control, significant occupancy and active use of the major portion of the

---

4. These findings also distinguish our decision in *In re Tax Assessment of Real Estate of Greater Erie Economic Development Corp.,* 61 Pa.Cmwlth. 144, 433 A.2d 568 (1981), in which the owner charity rented its property to another charity at a profit.

premises for its own charitable work in order to sustain an exemption when some portion of the property is rented to another charitable entity. *Archdiocese of Philadelphia*, 617 A.2d at 825. The Borough assigns as error the trial court's findings that the Diocese has a continued right to possession and to control over the Licensees' areas and that the Diocese significantly occupies and actively uses a major portion of the property for its own charitable work.

The trial court found that the Diocese maintains a physical presence at the Bishop Boyle Center both as building administrator and as operator of the job center. The Diocese permits other organizations to occupy space as Licensees not as tenants. Further, the Diocese did not give up its right to possession and control of the property. The licenses are reviewed on a yearly basis to ensure that each occupant furthered the Bishop Boyle Center's mission in some manner. Also, the Diocese maintains both the interior and exterior of the premises. As these findings are supported by substantial evidence, they bind us. *St. Margaret Seneca Place.*

In *Archdiocese of Philadelphia*, this Court concluded that the Archdiocese's "use and occupancy based merely on its bus being parked in the garage and its having furniture stored in the basement does not satisfy the criterion of owner occupancy under 204(c)." *Archdiocese of Philadelphia*, 617 A.2d at 824. The facts in *Archdiocese of Philadelphia*, involving minimal, passive possession, are significantly different from the situation at the Bishop Boyle Center, where the Diocese maintains active, daily possession with some control over all activities on the property. At the Bishop Boyle Center,

Licensees are the necessary recipients of the Diocese's bounty and active participants in its charitable mission. We, therefore conclude that *Archdiocese of Philadelphia* does not control the outcome of the present controversy.

Nor does *Young Men's Christian Ass'n v. Reading*, 402 Pa. 592, 167 A.2d 469 (1961), compel a different result. Our Supreme Court determined that the portion of the Reading YMCA which was leased to other charities (3,900 sq. ft.) was not tax exempt, while the remainder of the property (115,100 sq. ft.) remained tax exempt. In *Young Men's Christian Ass'n* there was no question that the owner charity occupied the property. There was a question, however, about its receipt of income from the leases to the other charities. The Court held, "[w]e are of the opinion that this subsection [granting tax exemption] was not meant to apply to cases where the owner charity *realized a rental income* from the leasing of the property." *Id.*, 402 Pa. at 598–99, 167 A.2d at 472 (emphasis added).[5] Unlike the income realized by the Reading YMCA, the Diocese here sustained a loss from its arrangement with Licensees. Also, the Licensees are themselves recipients of the Diocese's bounty and active participants in its charitable mission. These factual distinctions render *Young Men's Christian Ass'n* inapposite.

Accordingly, we affirm the trial court.

### ORDER

AND NOW, this 21st day of May, 2002, the order of the Court of Common Pleas of Allegheny County is affirmed.

---

**5.** We note that this 1961 decision specifically refers to subsection (i) of § 204 of the Law. The 1972 amendment to the Law rearranged the section and the text of previous subsection

(i) now appears in subsection (a)(9). Therefore, while the subsections are identified differently, the discussion still pertains to the same subject matter.