**VETERANS OF FOREIGN WARS POST 1989, Appellant**

v.

**INDIANA COUNTY BOARD OF ASSESSMENT APPEALS, Indiana County, White Township and Indiana Area School District.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 9, 2008.

Decided Aug. 1, 2008.

Matthew A. Ross, Indiana, for appellant.

M. Janet Burkardt, Pittsburgh, for appellee, Indiana Area School District.

BEFORE: PELLEGRINI, Judge, and FRIEDMAN, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

The Veterans of Foreign Wars, Post 1989 ("VFW Post 1989") appeals an order of the Court of Common Pleas of Indiana County ("trial court") holding that certain real property owned by VFW Post 1989 and used as a public golf course is not tax exempt. In doing so, the trial court affirmed the decision of the Indiana County Board of Assessment Appeals ("Board"). In this appeal, we consider whether VFW Post 1989's use and occupancy of the subject property was sufficiently connected to its charitable purpose to qualify for an exemption under applicable constitutional and statutory law.

VFW Post 1989 is a non-profit, non-stock business organization that has been designated as exempt from income taxation under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). One hundred percent of all revenue received or earned by VFW Post 1989 is used for charitable activities. VFW Post 1989's charitable activities include funding the award of scholarships and payment of death benefits to families of deceased veterans; making monetary donations to Veterans Administration hospitals and the Red Cross; sponsoring little league baseball teams; participating in military funerals; distributing Christmas baskets at

veterans' homes; and making its post building available for use by veterans' groups.

VFW Post 1989 owns two parcels of real property located in White Township, Indiana County. The first parcel contains 115 acres of land and the second contains .28 acres of land. VFW Post 1989 leases the entire second parcel and 109 acres of the first parcel ("Leased Property") to the VFW Country Club of Indiana County. VFW Country Club is a non-profit, non-stock corporation organized under the laws of the Commonwealth of Pennsylvania. It is a distinct legal person, separate from VFW Post 1989.

The Leased Property has been used as a golf course open to the public for a fee since 1944. All expenses associated with operating the golf course, including wages for employees, equipment, chemicals, gasoline, utilities, food and beverages, and golf supplies are funded out of golf course revenues. Under the lease agreement, the VFW Country Club pays VFW Post 1989 a monthly rent of $650 as well as all net profits it realizes from the golf course operation.

The Leased Property, which totals 109.28 acres, is not listed as tax exempt on the tax records of Indiana County. On August 28, 2002, VFW Post 1989 filed an Application for Exemption from County Taxation, and on November 18, 2002, the Board denied the application. It held that VFW Post 1989 did not qualify as an institution of purely public charity pursuant to the Institutions of Purely Public Charity Act, Act of November 26, 1997, P.L. 508, 10 P.S. §§ 371–385 (commonly referred to as "Act 55"). VFW Post 1989 appealed the Board's decision.

The trial court reversed the Board's determination that VFW Post 1989 was not an institution of purely public charity. Nevertheless, the trial court affirmed the decision of the Board that the Leased Property was not exempt from taxation. Relying on Section 5(h)(1) of Act 55,[1] the trial court held that the use of the Leased Property generated revenue but, otherwise, did not advance the charitable purpose of VFW Post 1989. VFW Post 1989 now appeals.

■■■ On appeal,[2] VFW Post 1989 argues that the trial court erred in holding that the Leased Property was not entitled to tax exemption. First, VFW Post 1989 contends that use of the Leased Property as a golf course advances its charitable purpose as required by Section 5(h)(1) of Act 55. Second, VFW Post 1989 argues that it uses and occupies the subject Leased Property in a manner sufficient to

1. Section 5(h)(1) of Act 55, entitled "parcel review," states:

> (h) Parcel Review.—
> (1) Nothing in this act shall affect, impair or hinder the responsibilities or prerogatives of the political subdivision responsible for maintaining real property assessment rolls to make a determination whether a parcel of property or a portion of a parcel of property is being used to advance the charitable purpose of an institution of purely public charity or to assess the parcel or part of the parcel of property as taxable based on the use of the parcel or part of the parcel for purposes other than the charitable purpose of that institution.

10 P.S. § 375(h)(1)

2. Whether a parcel of property qualifies for tax exemption is a question of law. As such, this Court's "standard of review is *de novo* and our scope of review is plenary." *Granville Township v. Board of Assessment Appeals of Mifflin County*, 900 A.2d 1012, 1014 (Pa. Cmwlth.2006). In a tax assessment appeal, our review is limited to "determin[ing] whether the trial court abused its discretion or committed an error of law and whether the decision is supported by the requisite evidence." *Id.*

clear the hurdles of Section 204 of The General County Assessment Law (Assessment Law), Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–204.

■ We address, first, VFW Post 1989's primary contention that the use of the Leased Property as a golf course advances its charitable purpose. When the status of an institution as a purely public charity is not in question, as in the instant case, the focus is on the "actual and regular use that the qualifying institution makes of its property and the relationship of that use to the institution's purposes." *Alliance Home of Carlisle, PA, v. Board of Assessment Appeals,* 591 Pa. 436, 465, 919 A.2d 206, 224 (2007). Article VIII, Section 2(a)(v) of the Pennsylvania Constitution has authorized the General Assembly to provide a real property tax exemption to an institution of purely public charity for "that portion of real property of such institution which is actually and regularly used for the purposes of the institution."[3] Under Section 5(h)(1) of Act 55, the applicant for an exemption must show that the parcel in question is "used to advance the charitable purpose of an institution of purely public charity." 10 P.S. § 375(h)(1).

*Alliance Home,* the Supreme Court's most recent pronouncement on purely public charity exemptions, involved a continuing care retirement community (CCRC) operated to advance the charitable purpose of providing a place to live for the aged and infirm where they could receive care appropriate to their needs. The CCRC sought a tax exemption for that part of the community that provided housing to persons still able to live independently. The Supreme Court held that this portion of the facility was tax exempt. *Alliance Home,* 591 Pa. at 468, 919 A.2d at 225. The Supreme Court explained that the independent living facility would not qualify as a purely public charity if it were a stand-alone operation. However "its role in the comprehensive care scheme provided by appellant is consistent with, is tied to, and advances appellant's charitable purpose." *Id.* at 468–469, 919 A.2d at 226. In defining the breadth of its holding, the court expressly stated that an exemption would not be available to a purely public charity "for any separate money-generating facility and property," even if "it proved that the proceeds were diverted to its charitable facilities." *Id.* at 470 n. 13, 919 A.2d at 227 n. 13. The Court emphasized the special nature of a CCRC by observing that "[t]he independent living facility is not a public restaurant, movie theater, *golf course* or some other unrelated business entity existing solely as a revenue stream to finance a different and charitable endeavor." *Id.* at 469, 919 A.2d at 226 (emphasis added).

In the present case, VFW Post 1989 argues that the Leased Property advances that charitable purpose because the revenue generated by the golf course *is* the charity. VFW Post 1989 claims that its situation is like that in *Alliance Home,* the

3. Article VIII, Section 2(a)(v) of the Pennsylvania Constitution establishes the power of the General Assembly to grant tax exemptions to institutions of purely public charity and the scope of such exemptions as follows:

  (a) The General Assembly may by law exempt from taxation:

          * * *

  (v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.

Pa. Const. art. VIII, § 2(a)(v).

only difference being that VFW Post 1989 donates money, as opposed to providing services, for charitable purposes.[4]

The Pennsylvania Supreme Court has specifically rejected the legal argument presented by VFW Post 1989. Although the Leased Property generates revenue for VFW Post 1989, it is operated as an "unrelated business entity existing solely as a revenue stream to finance a different and charitable endeavor" and, as such, is not entitled to an exemption. *Alliance Home*, 591 Pa. at 469, 919 A.2d at 226. Land used to generate profits for the charity is not entitled to an exemption. Indeed, in *Alliance Home*, the Supreme Court singled out a golf course as an example of a property that could not be tax exempt even if owned by a purely public charity because it is, by its very nature, not integral to a charity's charitable purpose.

■ Alternatively, VFW Post 1989 contends that it is entitled to tax exemption on the Leased Property on the theory that it occupies that property. In that regard it points to this Court's holding in *Borough of Homestead v. St. Mary Magdalen Church*, 798 A.2d 823 (Pa.Cmwlth.2002).

In *St. Mary*, we allowed a tax exemption for a piece of real estate, a former parochial school, that was owned by the Diocese of Pittsburgh and known as the Bishop Boyle Center. The Center was operated by the Diocese at a financial loss to house charities whose missions were to assist persons displaced by the closure of the steel mills in Homestead. In addition, one for-profit organization occupied 16 percent of the center, the rent from which helped defray the Diocese's expenses to operate the Bishop Boyle Center. The issue was not whether the Diocese was a purely public charity but whether the Diocese actually occupied the center.

Here, the Indiana Area School District concedes that VFW Post 1989 is exempt by reason of Section 204(a)(9) of the Assessment Law.[5] However, this is not enough. Section 204(b) and (c) of the Assessment Law also require a purely public charity to occupy the real estate it owns in order to qualify for an exemption. Section 204(b) states that a property leased by a purely public charity to another entity is "subject to taxation" unless the lessor is the object of the charity. 72 P.S. § 5020–204(b).[6] Section 204(c) also requires that

---

4. Although a large portion of the work of VFW Post 1989 is to make charitable monetary donations to individuals and institutions, VFW Post 1989 does far more. For example, VFW Post 1989 participated in the effort to create the Veterans Administration and the national veterans' cemetery system; lobbied for compensation for veterans exposed to Agent Orange and for veterans diagnosed with Gulf War Syndrome; and lobbied to improve VA medical centers. Based on those stipulated facts, it cannot be said that the *sole* mission of VFW Post 1989 funds for charitable purposes.

5. It states as follows:

(a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

\* \* \*

(9) All real property owned by one or more institutions of purely public charity, used and occupied partly by such owner or owners and partly by other institutions of purely public charity, and necessary for the occupancy and enjoyment of such institutions so using it.

72 P.S. § 5020–204(a)(9).

6. Section 204(b) of the Assessment Law states:

(b) Except as otherwise provided in clauses (11) and (13) of this section [relating to libraries and fire stations], all property real or personal, other than that which is actually and regularly used and occupied for the

the charity must have "legal or equitable title in the realty" in order for the realty it occupies to be exempt. 72 P.S. § 5020–204(c).[7] If either Section 204(b) or 204(c) is not met, an exemption otherwise available under Section 204(a) must be denied. *In Re Appeal of Archdiocese of Philadelphia,* 151 Pa.Cmwlth. 480, 617 A.2d 821, 826 (1992) (holding that where a portion of the purely public charity's property is leased to another, the charity must prove most of the property is used for the charitable work of the property-owner charity).[8]

The Indiana Area School District argues that VFW Post 1989 is not entitled to an exemption on the Leased Property because persons using the golf course are not objects of charity and because VFW Post 1989 has relinquished control of the Leased Property. We agree.

In *St. Mary,* we found that the Diocese occupied the Bishop Boyle Center because it maintained the interior and exterior of the premises; paid all utilities; and supervised the center. In holding that the Diocese had satisfied the occupancy requirements of Section 204(c), this Court stated:

> purposes specified in this section, *and all such property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity, shall be subject to taxation,* except where exempted by law for State purposes, and nothing herein contained shall exempt same therefrom.
> 72 P.S. § 5020–204(b) (emphasis added).

7. Section 204(c) of the Assessment Law states:
   (c) Except as otherwise provided in clause (10) of this section [relating to playgrounds], *all property,* real and personal, actually and regularly used and occupied for the purposes specified in this section shall *be subject to taxation, unless the person* or persons, associations or corporation, so using and occupying the same, *shall be seized of the legal or equitable title in the realty and possessor of the personal property absolutely.*

The facts in *Archdiocese of Philadelphia,* involving minimal, passive possession, are significantly different from the situation at the ... [c]enter, where the [church] maintains active, daily possession with some control over all activities on the property.

798 A.2d at 829. Stated otherwise, at no time did the Diocese relinquish its right to possession and control of the property.

Here, the circumstances of this case are unlike those in *St. Mary,* where there was "active, daily possession [by the charitable owner-entity] with some control over all activities on the property." *Id.* VFW Post 1989 does not have a physical presence on the Leased Property. VFW Post 1989's occupancy is "minimal" or "passive," which this Court has found inadequate to clear the exclusionary hurdle of Section 204(c). *See Archdiocese of Philadelphia,* 151 Pa. Cmwlth. 480, 617 A.2d 821.

Section 204(b) does not exempt property owned by a charity and leased to another unless the lessee is the recipient of the lessor's bounty. VFW Post 1989 requests

72 P.S. § 5020–204(c) (emphasis added).

8. In *Archdiocese of Philadelphia,* a church leased a building to an organization providing a shelter to pregnant women and their dependent children. In support of its claim that it occupied the property, the church noted that it parked a bus in the garage of the building and stored used furniture in the basement of the building during the lease. This Court held that merely parking a bus in the garage and storing furniture in the basement was not sufficient to satisfy the owner-occupancy requirement of Section 204(c). *Id.* at 824. We explained that "to clear the hurdle of 204(c), *the property owner must prove* its continuing right of possession and control, *significant occupancy and active use of the major portion of the premises for its own charitable work* in order to sustain an exemption when some portion of the property in question is rented." *Id.* at 825 (emphasis added).

that we read Section 204(b) to allow an exemption even though the lessee is not the recipient of the lessor-organization's charity, arguing that this would allow it to serve a greater number of people.

We are, of course, unable to read a duly enacted statute except in accordance with its plain language. Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Section 204(b) is clear that a property lessee's generation of income for a charity is not sufficient for a tax exemption on that property. Notably, Section 204 completely exempts from taxation libraries and fire stations even where those buildings generate income from rents of part of the building. *See* Sections 204(a)(11), (a)(13) of the Assessment Law, 72 P.S. §§ 5020–204(a)(11), (a)(13).[9] The legislature did not provide a similar exemption for other charities. The maxim *expressio unius est exclusio alterius* holds that the express inclusion of one thing implies the exclusion of another; this means that any omission by the legislature was deliberate. *Commonwealth v. Ostrosky*, 589 Pa. 437, 446 n. 7, 909 A.2d 1224, 1229 n. 7 (2006); BLACKS LAW DICTIONARY 620 (8th ed.2004). VFW Post 1989 needs to address to the General Assembly its policy argument that property generating rental income for a charitable purpose should be tax exempt.

■ This outcome of appeal is commanded by our Supreme Court, which has explained that land used by "unrelated business entit[ies] existing solely as a revenue stream to finance a different and charitable endeavor" is not entitled to an exemption. *Alliance Home*, 591 Pa. at 469, 919 A.2d at 226. Accordingly, the order of the Court of Common Pleas of Indiana County is affirmed.

### ORDER

AND NOW, this 1st day of August, 2008, the order of the Court of Common Pleas of Indiana County dated December

9. Sections 204(a)(11) and 204(a)(13) read as follows:

(a) The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:
\* \* \*

(11) All buildings owned and occupied by free, public, nonsectarian libraries, and the land on which they stand and that which is immediately and necessarily appurtenant thereto, *notwithstanding the fact that some portion or portions of said building or lands appurtenant may be yielding rentals* to the corporation or association managing such library: Provided, That the net receipts of such corporation or association from rentals shall be used solely for the purpose of maintaining the said library;
\* \* \*

(13) All fire and rescue stations which are founded, endowed and maintained by public or private charity, together with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, and social halls and grounds owned and occupied by fire and rescue stations, used on a regular basis for activities *which contribute to the support of fire and rescue stations: Provided, That the net receipts from such activities are used solely for the charitable purposes* of the fire and rescue stations.

72 P.S. §§ 5020–204(a)(11), (a)(13) (emphasis added).

3, 2007, in the above-captioned matter is hereby AFFIRMED.