# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rouse Brokenstraw Associates   :
Corporation,   :
  :
               Appellant   :
  :
             v.   : No. 1197 C.D. 2017
  : Argued: May 7, 2018
  :
Warren County Board of Appeals,   :
City of Warren, and Warren County   :
School District and Warren County   :


BEFORE:     HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                FILED: June 11, 2018


Rouse Brokenstraw Associates Corporation (RBA) appeals the order of the Court of Common Pleas of the 37th Judicial District, Warren County Branch, (trial court) affirming the decision of the Warren County Board of Appeals (Board) denying an exemption from real estate taxes for RBA's apartment building known as Canterbury Court.[1] We affirm.

---

[1] Article 8, Section 2(a)(v) of the Pennsylvania Constitution states, "[t]he General Assembly may by law exempt from taxation . . . [i]nstitutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution." Pa. Const. art. VIII, §2(a)(v). Under the test enunciated in *Hospital Utilization Project v. Commonwealth*, 487 A.2d 1306, 1317 (Pa. 1985) (*HUP*), in order to be considered an "institution of purely public charity" under Article 8, Section 2(a)(v), a landowner must: (1) advance a charitable purpose; (2) donate or render

Following a hearing, the trial court made the following relevant findings of fact. RBA is a non-profit corporation that is exempt from federal tax under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. §501(c)(3), and is exempt from state taxes. RBA owns an apartment building known as Canterbury Court and has paid property taxes through 2013 on the building. RBA claims that the building is exempt from property taxes from 2014 onward.

Canterbury Court was financed through a Section 202 loan under the Federal Housing Act of 1959 (Housing Act), 12 U.S.C. §1701q, from the Department of Housing and Urban Development (HUD) to provide housing for low-income, elderly persons and only accepts low-income tenants who are at least 62 years old. The amount of rent that the tenants pay is determined by a formula that HUD calculates. HUD pays a subsidy to RBA in addition to the rent paid. The Housing Authority of Warren County (Authority) manages the building as RBA's agent. RBA pays the Authority for this service provided there are sufficient funds. RBA pays the Authority this management fee and for work done by Authority employees, which are pro-rated portions of their salaries based on the time spent at Canterbury Court.

All members of RBA's Board of Directors (Board) work on a volunteer basis and are not paid and all but one is a member of Trinity Memorial Episcopal Church (Trinity), the driving force behind the creation of Canterbury Court. The Board conducts regular meetings.

Elaine Rhodes, the Board's president, testified that she donates her time to attend Board meetings and to help meet the needs of RBA/Canterbury Court. She

---

gratuitously a substantial portion of its services; (3) benefit a substantial and indefinite class of persons who are legitimate subjects of charity; (4) relieve the government of some of its burden; and (5) operate entirely free from private profit motive.

2

stated that she asked Trinity for a donation to pay for community events at Canterbury Court such as holiday parties for its tenants and that Trinity has made an annual cash donation for this purpose. Tonya Mitchell-Weston, the Authority's executive director, testified that Trinity's donation has never exceeded $1,000.00 in a given year. She stated that the Authority has a group of volunteers known as the "Holiday Club," which also helps tenants celebrate holidays at Authority properties, including Canterbury Court. Joe Saeli, an Authority employee, testified that he has worked overtime at Canterbury Court without pay on one occasion when an elevator broke down. Tracey Templeton Hill, the Authority's finance director, testified that, using generally accepted accounting practices, RBA has operated at a loss in recent years including 2014 onward. She stated that she attributes much of the shortfall to an increase in the assessed value of the property and the resulting increase in property taxes. She testified that the vast majority of RBA's revenues are from the rent that the tenants pay and HUD's subsidy. She stated that the only other source of revenue is Trinity's comparatively small donation. Hill testified that RBA is not free to raise the rent because HUD has strict rules regarding rent increases.

With respect to the *HUP* test, the parties agreed that RBA established the first, third, and fifth prongs, *i.e.*, that it advances a charitable purpose; that it benefits a substantial and indefinite class of persons who are legitimate subjects of charity; and that it operates entirely free from a profit motive. However, based on the foregoing, the trial court concluded that RBA failed to demonstrate that it meets the second prong, that it donates or gratuitously renders a substantial portion of its services, because its "paramount purpose . . . is to provide housing services," and "these services are provided for cost [because a]ll residents pay rent" and "a subsidy is provided by HUD" "[i]n addition to the rent." Trial Court 7/26/17 Opinion at 4.

3

The trial court rejected RBA's assertion that the unremunerated Board work constitutes gratuitous services because the work is for RBA's benefit and not the tenants. *Id.* at 4-5. Additionally, the trial court found that Trinity's annual $1,000.00 donation, although generous, "does not finance a substantial portion of the services provided by Canterbury Court." *Id.* at 5. The trial court also rejected RBA's assertion that the "Holiday Club" provides gratuitous services because the "Authority is paid by RBA for that service" and "it is not apparent that the . . . services to the tenants of Canterbury Court were a result of any initiative taken by RBA." *Id.* Further, "[e]ven if the club's services are attributable to RBA, these services are not a substantial part of all services provided by RBA." *Id.* Finally, the trial court found that the "unpaid overtime work done by [Authority] employees at Canterbury Court is not a gratuitous service of RBA, nor is it a substantial portion of all services provided by RBA." *Id.* The court determined that even if the unpaid emergency maintenance that has been provided "is gratuitous in nature, then the beneficiary is the [Authority], which was obligated to perform the emergency maintenance promptly" because "[t]he tenants of Canterbury Court pay for maintenance when they pay their rent." *Id.*

The trial court concluded that *National Church Residences v. Mercer County Board of Assessment Appeals*, 925 A.2d 220 (Pa. Cmwlth. 2007), *appeal denied*, 944 A.2d 759 (Pa. 2008), and *WRC North Fork Heights, Inc. v. Board of Assessment Appeals*, 917 A.2d 893 (Pa. Cmwlth.), *appeal denied*, 944 A.2d 760 (Pa. 2007), are controlling. Trial Court 7/26/17 Opinion at 6. The trial court found that *National Church Residences* involved a facility named Buchanan Manor that was substantially similar to Canterbury Court in the following respects: (1) its construction was funded through Section 202 of the Housing Act; (2) its purpose

4

was to provide subsidized housing for low-income, elderly residents; (3) HUD determined the amount of rent that its tenants would pay; (4) HUD provided subsidies for the tenants' rent through the program under Section 8 of the Housing and Community Development Act of 1974, 42 U.S.C. §1437f; (5) its operation was given over to a management company in exchange for a percentage of gross revenue; and (6) the Board of the company that owned Buchanan Manor was not remunerated. *Id*. Accordingly, the trial court affirmed the Board's decision denying RBA's request for an exemption for Canterbury Court and RBA filed the instant appeal.[2]

The trial court subsequently filed a Pa. R.A.P. 1925(a) opinion in which the court rejected RBA's claim that it meets the fourth prong of the *HUP* test, *i.e.*, that it relieves the government of some burden "by absorbing costs associated with depreciation, litigation, finances, and staffing." Trial Court 11/2/17 Opinion at 1. With respect to depreciation, the trial court determined that "[a]ccounting for depreciation may have been of greater concern to the Court if [RBA was] arguing about the assessed value of the property, but [RBA]'s challenge only related to whether or not [RBA] is entirely exempt from property taxes." *Id.* at 2. With respect to litigation, the court determined, "While it is true that [RBA] has taken it upon itself to litigate this matter and certain of its personnel appeared to testify, [RBA]'s

---

[2] As this Court has explained:

> Whether a parcel of property qualifies for tax exemption is a question of law. As such, this Court's "standard of review is *de novo* and our scope of review is plenary." In a tax assessment appeal, our review is limited to "determin[ing] whether the trial court abused its discretion or committed an error of law and whether the decision is supported by the requisite evidence."

*Veterans of Foreign Wars Post 1989 v. Indiana County Board of Assessment Appeals*, 954 A.2d 100, 102 n.2 (Pa. Cmwlth. 2008) (citation omitted).

action does not further a goal of alleviating a government burden." *Id.* With respect to finances, the trial court found "that whatever staffing obligations exist at Canterbury Court are occasioned by the management of the same by the [Authority]. All money paid to the [Authority] . . . comes from revenues from rents received and a federal government subsidy." *Id.* Finally, the trial court rejected RBA's assertion that its sponsorship of Canterbury Court for the federal subsidy relieves the government of some burden, finding it "is not justified" and "that [RBA]'s argument is rebuffed – at least tacitly – by [*National Church Residences* and *WRC North Fork Heights, Inc.*] *Id.* at 3.

In this appeal, RBA first claims that the trial court erred in determining that it failed to demonstrate that it met the second prong of the *HUP* test. RBA asserts that a non-profit may satisfy the "donate or render gratuitously a substantial portion of its services" prong of the *HUP* test when it provides senior housing at cost or less regardless of whether it receives federal subsidization under *St. Margaret Seneca Place v. Board of Property Assessment Appeals and Review*, 640 A.2d 380 (Pa. 1994). RBA asserts that in holding that RBA did not demonstrate that it met the second *HUP* prong, the trial court confused RBA's relationship with the Authority; RBA owns the building while the Authority provides the management services. RBA contends that although it pays the Authority a 6.88% management fee, any profit derived by the Authority does not inure to RBA's benefit and it provides 100% of its services gratuitously. Further, RBA contends that the trial court's reliance on *National Church Residences* and *WRC North Fork Heights, Inc.* is misplaced because in *National Church Residences*, the owner contracted with its parent company to provide maintenance services while RBA only contracts with the Authority for such services. Additionally, in *National Church Residences*, HUD

6

contracted for zero-based budgeting, which required HUD to increase its subsidies to account for increases in real estate taxes. No such agreement exists herein.[3]

However:

> Whether or not the portion donated or rendered gratuitously is "substantial" is a determination based on the totality of the circumstances surrounding the organization. The word "substantial" does not imply a magical percentage. It must appear from the facts that the organization makes a *bona fide* effort to service primarily those who cannot afford the "usual fee."

*HUP*, 487 A.2d at 1315 n.9.

RBA's reliance on *St. Margaret Seneca Place* is misplaced because in that case, 48% of the residents received Medicaid funding which only covered two-thirds of the patients' costs with the nursing home paying the remaining balance. 640 A.2d at 382. The Supreme Court held that "[t]he showing that the nursing home bears one-third of the cost of care for half its residents satisfies the home's burden of proof for this requirement." *Id.* at 384.

---

[3] RBA also argues that under Section 204(a)(3) of the General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §5020–204(a)(3), a charity providing residential housing that receives subsidies for 95% of the units from a low-income federal housing program remains a tax exempt "purely public charity" provided that any surplus in assistance is monitored by the appropriate governmental agency. In this case, there is no dispute that 95% or more of Canterbury Court's units receive such federal subsidies and that HUD monitors any surplus. RBA further asserts that the residency requirements established by HUD and imposed on RBA satisfy the requirements of the Institutions of Purely Public Charity Act (Act 55), Act of November 26, 1997, P.L. 508, 10 P.S. §§371–385. However, because RBA does meet the constitutional requirements under *HUP*, any consideration of the provisions of the General County Assessment Law or Act 55 is unnecessary. *See HUP*, 487 A.2d at 1312 ("Hence, we begin our analysis by recognizing that regardless whether HUP qualifies as a 'charitable organization' under [the statutory exemption], as defined by the Pennsylvania Code . . . it must first qualify under the Constitution as a 'purely public charity' . . . . Because we reach the conclusion in our following discussion that HUP is not a 'purely public charity' within the meaning of the Constitution, we do not reach whether HUP qualifies under the Pennsylvania Code definition.").

7

Conversely, in *National Church Residences*, as in the instant matter, the difference between the cost of services and the government subsidy was not paid by the property owner, but by the residents themselves through rent. Likewise, RBA's business model and operations are identical to those in *National Church Residences* that were determined not to satisfy the *HUP* requirements. *See also G.D.L. Plaza Corporation v. Council Rock School District*, 526 A.2d 1173, 1177 (Pa. 1987) ("In the present case all operating costs of the Plaza not covered by rents paid by the tenants is borne by federal government subsidies. This includes salaries of those who provide the services for the Plaza and the expenses for the services themselves, all of which are channelled through the management fee paid to [the management company] from revenue obtained from the government subsidies.").

Here, the trial court did not consider the volunteer work by the RBA Board to be substantial and did not deem the holiday parties a substantial part of the services that are provided to the residents of Canterbury Court. Further, the trial court found that RBA has realized net gains before depreciation and that in the only year in which RBA did not realize a net gain, 2014, RBA had incurred substantial fees in refinancing its mortgage, which has subsequently saved RBA tens of thousands of dollars each year in interest payments. Any suggestion that RBA cannot operate within HUD's budget is not supported by the facts as found below. *See, e.g.*, *National Church Residences*, 925 A.2d at 228 ("Mercer's Audited Financial Reports for years 1999 through 2005 . . . reflected that Mercer operated at a net profit each of those years from a cash-flow standpoint before depreciation, even after the inclusion of the management fee . . . . Additionally, the audited financial statements and tax returns reflect that Mercer had operated at a net profit before depreciation with positive cash-flow."); *WRC North Fork Heights, Inc.*, 917 A.2d at

8

901 ("WRC's vague testimony that it assists residents in accessing help with medical, social, emotional and spiritual needs, with no attempt to quantify the costs incurred by WRC, could not meet the specific requirements regarding donations stated in [Act 55]. In terms of the *HUP* analysis, the record lacks evidence that WRC donates or renders gratuitously a 'substantial portion' of its services."). Because RBA does not donate a substantial portion of its services as required by *HUP*, it is not entitled to a tax exemption as a "purely public charity" under the Constitution.[4]

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

---

[4] Because RBA does not satisfy the second prong of the *HUP* test, we need not consider whether the trial court erred in also determining that RBA does not satisfy the fourth prong of that test. *See, e.g.*, *Lehighton Area School District v. Carbon County Board of Assessment*, 708 A.2d 1297, 1302 (Pa. Cmwlth. 1998) ("We first review the *HUP* standard, keeping in mind that the applicant must satisfy all five criteria of the *HUP* test. *Associated YM–YWHA of Greater New York/Camp Poyntelle v. County of Wayne*, [613 A.2d 125 (Pa. Cmwlth. 1992)].").

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rouse Brokenstraw Associates      :
Corporation,      :
     :
             Appellant      :
     :
         v.      : No. 1197 C.D. 2017
     :
Warren County Board of Appeals,      :
City of Warren, and Warren County      :
School District and Warren County      :

## **O R D E R**

AND NOW, this 11th day of June, 2018, the order of the Court of Common Pleas of the 37th Judicial District, Warren County Branch, dated July 24, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge